**FILED & ENTERED**

**APR 05 2016**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY HANDY      DEPUTY CLERK

# NOT FOR PUBLICATION

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### NORTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 9:07-bk-10362-PC |
| | ) | |
| MARIA VISTA ESTATES, a California General Partnership, | ) ) | Adversary No. 9:15-ap-01096-PC |
| | ) | Chapter 7 |
| Debtor. | ) ) | |
| _____ | ) ) | **MEMORANDUM RE:  PLAINTIFF** |
| MARIA VISTA ESTATES, a California General Partnership, | ) ) | **MARIA VISTA ESTATES' MOTION FOR REMAND OF ACTION TO STATE** |
| | ) | **COURT** |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MI NIPOMO, LLC, a Delaware limited liability company, COSTA PACIFICA ESTATES HOMEOWNERS ASSOCIATION, a California corporation, | ) ) ) ) | Date:   March 10, 2016 Time:   10:00 a.m. Place:  Courtroom # 201 |
| Defendants. | ) ) | 1415 State Street Santa Barbara, CA  93101 |
| _____ | ) | |

Plaintiff, Maria Vista Estates ("MVE"), the Debtor in this chapter 7 case, seeks an order

remanding the above referenced adversary proceeding to the Superior Court of California,

County of San Luis Obispo, pursuant to 28 U.S.C. § 1447(c) and FRBP 9027(d).[1]  Defendants,

_____

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the
Bankruptcy Code, 11 U.S.C. §§ 101-1330.  "Rule" references are to the Federal Rules of

Mi Nipomo, LLC ("Nipomo") and Costa Pacifica Estates Homeowners Association ("Costa Pacifica") oppose the motion.  Having considered the pleadings, evidentiary record,[2] and argument of counsel, the court will deny MVE's motion to remand based upon the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to adversary proceedings in bankruptcy cases.

## I. STATEMENT OF FACTS

A. MVE's Bankruptcy.

On March 23, 2007, MVE filed a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code in the above referenced case.  MVE involved a "single asset real estate" as defined in § 101(51B).  In the schedules filed on April 6, 2007, MVE disclosed as its only significant asset a real estate development of 84 acres of real property located at 555 Vista Del Rio, Nipomo, CA (the "MVE Project").

1. Security Pacific Bank's Motion for Relief from Stay

Security Pacific Bank asserted the following liens against the MVE Project:  (1) A Construction Deed of Trust ("First Construction Deed of Trust") against Phase I of the MVE Project securing a note in the original principal sum of $15,800,000 dated December 28, 2004 ("Phase I Loan"); and (2) a Construction Deed of Trust ("Second Construction Deed of Trust") against Phase II of the MVE Project securing a note in the original principal sum of $7,850,000 dated November 2, 2005 ("Phase II Loan").  Each of the notes was personally guaranteed by Erik Benham ("Benham").

Prior to the petition date, Security Pacific Bank had filed suit to foreclose its liens against the MVE Project in Case No. CV061009, Security Pacific Bank v. Maria Vista Estates, et. al, in

Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[2] Plaintiff Maria Vista Estates' Objection to Defendants' Request for Judicial Notice is overruled.  The respective requests for judicial notice by MVE and Nipomo pursuant to F.R.Evid. 201 with respect to MVE's motion to remand and Nipomo's opposition thereto are granted.

the Superior Court of California, County of San Luis Obispo ("Judicial Foreclosure Action").

On April 14, 2008, Security Pacific Bank filed a motion seeking relief from the automatic stay

under § 362(d)(3) to continue the Judicial Foreclosure Action.  MVE opposed the motion.  On

May 12, 2008, the court entered an order granting Security Pacific Bank relief from the stay to

enforce its rights with respect to the following described real property in the MVE Project:

**"Phase I"**

LOT 1 AND THE "REMAINDER LOT" OF TRACT 1856, PHASE 1 IN THE
UNINCORPORATED AREA OF THE COUNTY OF SAN LUIS OBISPO,
STATE OF CALIFORNIA ACCORDING TO MAP RECORDED MAY 20,
2002 IN BOOK 20, PAGE 12 OF MAPS IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

**Excepting:**

LOT 6 OF TRACT NO. 1802, PHASE 2, IN THE COUNTY OF SAN LUIS
OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE TRACT MAP
RECORDED FEBRUARY 1, 2005 IN BOOK 25, PAGES 36 THROUGH 46 OF
MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

**"Phase II"**

LOTS 15, 16, 33 THROUGH 38 INCLUSIVE AND 46 THROUGH 52
INCLUSIVE OF TRACT 1802, PHASE 2, IN THE COUNTY OF SAN LUIS
OBISPO, STATE OF CALIFORNIA, ACCORDING TO MAP RECORDED
FEBRUARY 1, 2005, IN BOOK 25, PAGES 36-46 OF MAPS, IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY.[3]

2. Security Pacific Bank's Motion to Correct Stay Order

On June 9, 2008, Security Pacific Bank filed an Emergency Motion for Order Correcting

the Legal Description of the "Phase I" Property in the Order Granting Security Pacific Bank

Relief From the Automatic Stay.  Security Pacific Bank asserted, in pertinent part, that:  (1) the

legal description of the Phase I property contained in the Stay Order was based on an incorrect

legal description contained in the First Construction Deed of Trust recorded as Instrument No.

2005001667 on January 7, 2005; (2) the First Construction Deed of Trust was re-recorded as

---

[3] Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 ("Stay
Order") [Dkt. # 93], Exhibit 1.

Instrument No. 2005042186 on May 24, 2005 ("Re-recorded First Construction Deed of Trust"),

to correct the legal description of Security Pacific Bank's collateral; and (3) that MVE agreed to

the correction by letter agreement dated June 20, 2005, executed by MVE's general partners,

BenIng Company, LLC[4] and Pender Properties, Inc.  Benham responded to the motion on June

11, 2008, stating that Security National Bank is "trying to establish a security interest that I have

disputed and that this court specifically withheld ruling on."[5]

On June 23, 2008, the court overruled Benham's objection and entered an amended order

granting Security Pacific Bank relief from the stay to enforce its rights with respect to the

following described real property in the MVE Project:

**"Phase I"**

PARCEL 1:

ALL OF TRACT NO. 1802, PHASE 2, IN THE COUNTY OF SAN LUIS
OBISPO, STATE OF CALIFORNIA, ACCORDING TO MAP RECORDED
FEBRUARY 1, 2005 IN BOOK 25, PAGES 36-46 OF MAPS, IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM LOTS 15, 16, 33 THROUGH 38 INCLUSIVE
AND 46 THROUGH 52 INCLUSIVE.

PARCEL 2:

ALL OF TRACT 1856, PHASE 2, IN THE COUNTY OF SAN LUIS OBISPO,
STATE OF CALIFORNIA, ACCORDING TO MAP RECORDED FEBRUARY
1, 2005, IN BOOK 25, PAGE 47-50 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY.

**Excepting:**

LOT 6 OF TRACT NO. 1802, PHASE 2, IN THE COUNTY OF SAN LUIS
OBISPO, STATE OF CALIFORNIA, ACCORDING TO THE TRACT MAP
RECORDED FEBRUARY 1, 2005 IN BOOK 25, PAGES 36 THROUGH 46 OF
MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

---

[4] Sometimes referred to in other pleadings filed with this court as "BenIng Company, L.L.C.,"
"Benning, Inc.," "Bening Company, LLC," "Bening, Inc.," and "BenIng, Inc."

[5] Erik Benham's Memorandum of Points and Authorities in Opposition to Security Pacific
Bank's Emergency Motion [Dkt. # 107] filed June 11, 2008, at 9:11-13.

**"Phase II"**

LOTS 15, 16, 33 THROUGH 38 INCLUSIVE AND 46 THROUGH 52
INCLUSIVE OF TRACT 1802, PHASE 2, IN THE COUNTY OF SAN LUIS
OBISPO, STATE OF CALIFORNIA, ACCORDING TO MAP RECORDED
FEBRUARY 1, 2005, IN BOOK 25, PAGES 36-46 OF MAPS, IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY.[6]

3.  MVE's Case Converts to Chapter 7

Pursuant to § 1112(b), the court converted MVE's chapter 11 case to a case under chapter 7 by order entered on July 9, 2008.  Jerry Namba ("Namba") was appointed as trustee.  Namba appealed the Amended Stay Order on the grounds that the bankruptcy court "necessarily [found], without due process, that Security Pacific Bank is a secured party with a perfected security interest in the collateral described in Exhibit A to the Amended Order."[7]  The appeal was transferred to the district court at the election of Security Pacific Bank and assigned Case No. 2:08-CV-05399-CBM.

On October 3, 2008, the district court dismissed the appeal pursuant to a stipulation between Namba and Security Pacific Bank filed September 25, 2008, pursuant to which Namba and Security Pacific Bank agreed that the bankruptcy court did not by the Amended Stay Order make a determination whether Security Pacific Bank's liens were duly perfected against the real property described in Exhibit 1 to the order and that the Amended Stay Order was not res judicata as to the nature, extent, validity and priority of Security Pacific Bank's liens against such property.  With dismissal of the appeal, the Amended Stay Order became a final order.

B.  Benham's Bankruptcy Case.

On June 24, 2008, Benham filed a voluntary petition under chapter 11 in Case No. 9:08-bk-11432, In re Erik Benham, Debtor.  In Schedule B(18), Benham disclosed as a liquidated debt owed on the petition date the sum of $8,500,000 secured by a "1st position deed of trust in part

---

[6]  Amended Order Granting Motion for Relief from the Automatic Stay Under 11 U.S.C. § 362 ("Amended Stay Order") [Dkt. # 115], Exhibit 1.

[7]  Statement of Issues on Appeal [Dkt. # 122] filed on July 14, 2008, at 2:2-5.

and second position deed of trust in part against real property owned by Maria Vista Estates."[8]

In Schedule B(21), which requires a disclosure of "other contingent and unliquidated claims of

every nature" held on the petition date, Benham responded "none."[9]  Security Pacific Bank was

listed in Schedule F as the holder of an unsecured claim in the amount of $23,346,626.15 based

upon a judgment on Benham's personal guaranty of MVE's debt to Security Pacific Bank

entered in the Judicial Foreclosure Action on November 6, 2007.

    1.  <u>Security Pacific Bank's Motion for Relief from Stay</u>

       On July 11, 2008, Security Pacific Bank filed a motion in Benham's bankruptcy case

seeking relief from the automatic stay under § 362(d)(1) & (4) to foreclose its deed of trust liens

on the MVE Project, notwithstanding Benham's assertion in his Schedule B of a lien on the

project.  Security Pacific Bank argued that it had noticed the foreclosure sales of MVE's Phase I

and Phase II properties, that Benham had sought and was denied a temporary restraining order to

prevent the bank from foreclosing on MVE's Phase I property, and that Benham had filed his

chapter 11 petition in bad faith for the sole purpose of hindering and delaying Security Pacific

Bank's efforts to foreclose on its collateral.  Benham responded on July 28, 2008, claiming that

"the Bank's [Re-recorded First Construction Deed of Trust] was fraudulently recorded and does

not create a lien in favor of the Bank with respect to at least 25 lots created out of the original lot

1802."[10]  Benham testified by declaration that:

> I purchased two parcels in Nipomo, California, comprising 84.4 acres which will
> be referred to as lot 1802 and lot 1856.  I entered into a transaction in which I
> formed Benning, Inc.  Mark Pender created Pender Properties, inc. [sic] LLC, and
> our two corporations entered into an agreement creating the Maria Vista Estates
> general partnership.  I then sold the Nipomo parcels to Maria Vista Estates.  The
> sale price was in excess of $8 million, which was paid with a promissory note, . . .

---

[8]  Schedule B [Dkt. # 14], at 11.

[9]  <u>Id.</u>

[10]  Debtor's Opposition to Points and Authorities in Opposition to Security Pacific Bank's
Motion for Relief from the Automatic Stay [Dkt. # 30] filed July 28, 2008, at 11:16-18.

Maria Vista Estates obtained financing from a third party, which was used to subdivide the parcels. Lot 1802 was subdivided into 40 residential lots. Lot 1856 was subdivided into 37 residential lots and the remainder lots for common areas and percolation sights. . .

MVE then obtained a loan in the initial principal sum of $15,800,000, reflected in the promissory note attached as exhibit 7 to the motion (the "1st Bank Loan"). The 1st Bank Loan was secured by the deed of trust recorded on January 11, 2005, . . . The 1st Bank Deed of Trust was secured only by lot 1856. . .

Mr. Pender and I then executed a Modification of Deed of Trust . . .

The Bank then recorded the document it attaches as exhibit 5 to its motion [Corrected Deed of Trust]. This document purports to extend the 1st Bank Deed of Trust to all of lot 1802 and lot 1856. This document attaches a new front page and two new pages to the back of the 1st Bank Deed of Trust. This document will be referred to as the Bank's exhibit 5.

Neither Mr. Pender nor I signed the Bank's Exhibit 5 in April, 2005 or at any other time. We did not appear in front of the notary, who purportedly notarized our signatures in April, 2005. For this reason, the Bank's Exhibit 5 is a fraud and was fraudulently recorded.

MVE then borrowed an additional $7,850,000 from the Bank, as reflected in exhibit 8 to the motion (the "2nd Bank Loan"). The 2nd Bank Loan is secured by the deed of trust attached as exhibit 6 to the motion (the "2nd Bank Deed of Trust"). The 2nd Bank Deed of Trust is secured by fifteen specifically identified lots created out of lot 1802.

Although my deed of trust does not extend to lot 1856, it is in first position with respect to at least 25 of the lots created out of the original lot 1802.

Because my Promissory Note bears a face value in excess of $8,000,000, my Promissory Note secured by my Deed of Trust is overwhelmingly the most important and valuable asset of this bankruptcy estate. My deed of trust, securing first position in 25 lots with homes and second position in fifteen lots with homes, is essential for my reorganization as a debtor.[11]

On November 7, 2008, Security Pacific Bank was closed by the California Department of Financial Institutions and the Federal Deposit Insurance Corporation was appointed as receiver for Security Pacific Bank ("FDIC"). The FDIC succeeded to ownership of the assets of the bank,

---

[11] Id. 13:24 – 15:20.

including all rights, claims, interests and liens of Security Pacific Bank with respect to the obligations of MVE and Benham.  On April 2, 2009, the court granted the FDIC relief from the stay to enforce its liens against the MVE Project.  The order specifically provided that "no determination is made hereby as to the validity, extent, priority, or enforceability of either (x) the Putative Benham Deed of Trust, or (y) the liens in favor of the Bank, in respect of the Property."[12]  On April 24, 2009, the court denied Benham's motion to reconsider its April 2nd order.

      2.  <u>Benham's Case Converts to Chapter 7</u>

On November 12, 2009, Benham's chapter 11 case was converted to a case under chapter 7.  Brad D. Krasnoff, who was appointed as trustee upon conversion, resigned on December 4, 2009, and David R. Hagen ("Hagan") was appointed as successor trustee.

C.  <u>Adversary No. 9:09-ap-01051.</u>

On March 12, 2009, the FDIC filed a complaint against Benham in Adversary No. 9:09-ap-01051, <u>Federal Deposit Insurance Corporation, as Receiver for Security Pacific Bank v. Erik Benham</u>, seeking "a judicial determination and declaration that the deed of trust, made and executed by the debtor herein, Maria Vista, as trustor, in favor of Erik Benham ("<u>Benham</u>") as beneficiary, dated March 18, 2003, and recorded in the Office of the County Recorder of San Luis Obispo on April 18, 2003 (the '<u>Benham Deed of Trust</u>'), does not constitute a valid or otherwise enforceable lien on the real property of the Maria Vista described in the Benham Deed of Trust (the '<u>Property</u>'), or any other property of the bankruptcy estate of Maria Vista."[13]  After Benham filed an answer to the complaint, the FDIC joined by Namba moved for summary judgment.  The FDIC's motion was granted after a contested hearing on July 2, 2009.  On August 10, 2009, a Judgment was entered in favor of the FDIC and against Benham which provided, in pertinent part:

---

[12]  Order Re Motion for Relief From Automatic Stay Under 11 U.S.C. § 362 [Dkt. # 132] entered April 2, 2009, at 3:15-17.

[13]  Complaint to Determine Validity of Lien Against Property of the Estate [Dkt. # 1] filed March 12, 2009, at 2:18-24.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that, as a consequence of execution and recordation of that certain "Substitution of Trustee and Full Reconveyance," dated July 23, 2007, and recorded in the Office of the County Recorder of San Luis Obispo, on October 9, 2007, as Instrument No. 2007066511 (the "Full Reconveyance"), to the fullest extent described or otherwise referenced in the Full Reconveyance, that certain Deed of Trust, Assignment of Rents, and Security Agreement," dated March 18, 2003, and recorded on April 18, 2003, in the Office of the County Recorder of San Luis Obispo as Instrument No. 2003040009 (the "Original Benham Deed of Trust"), as modified and amended by that certain "Modification of Deed of Trust," recorded in the Office of the County Recorder of San Luis Obispo as Instrument No. 2003087433 (the Original Benham Deed of Trust, as modified by the "Modification of Deed of Trust" is hereinafter referred to as the "Benham Deed of Trust"), the Benham Deed of Trust was canceled and extinguished, and the Benham Deed of Trust is of no force or effect; and it is further

ORDERED, ADJUDGED AND DECREED that each of (1) the execution, (2) the delivery, and (3) the recordation of that certain "Agreement Cancelling Reconveyance and Reinstating Deed of Trust and Promissory Note" recorded on January 16, 2008, in the Office of the County Recorder of San Luis Obispo as Instrument No. 2008002289, is (x) void, (y) of no force or effect, and (z) does not serve to create, maintain, or reinstate any lien on the Property . . . .[14]

Benham appealed the Judgment on August 20, 2009, but the appeal ultimately was dismissed on February 25, 2011, for lack of prosecution.

D.  Adversary No. 9:09-ap-01197.

Despite the Judgment entered in Adversary No. 9:09-ap-01051 eleven days earlier, Benham filed a complaint in Adversary No. 9:09-ap-01197, Benham v. Jerry Namba, as Chapter 7 Trustee for Debtor Maria Vista Estates on August 31, 2009, asserting that the execution and recordation of the Full Reconveyance was a mistake, the Full Reconveyance was void, and that the court should "declare [Benham's] liens over the property of the Debtor Maria Vista Estates under the Deed of Trust and Modification of Deed of Trust exist as if the Full Reconveyance had never been executed and recorded."[15]  On September 22, 2009, the FDIC intervened and

---

[14] Judgment [Dkt. # 37] entered August 10, 2009, at 2:5-22.

[15] Adversary Complaint to Determine Validity of Lien and Cancel Erroneous Recovneyance [sic] [Dkt. # 1] filed August 31, 2009, at 4:8-10.

thereafter moved to dismiss Benham's complaint.  Before the motion was heard, Benham's

bankruptcy case was converted to chapter 7 and Hagan was appointed trustee.  On December 3,

2010, Hagan, as the real party in interest, filed a statement of position in response to the FDIC's

motion to dismiss stating that "the claims asserted in the Adversary Proceeding are assets of the

Benham Bankruptcy Case, and are now under the exclusive administration of Hagen as Chapter

7 Trustee," and that such claims "are the subject of a pending settlement between Hagan and

various third parties, including, but not limited to the FDIC."[16]  On February 11, 2011, the court

entered an order denying the FDIC's motion and abstaining from further consideration of the

adversary proceeding "as a consequence of (a) the pendency of the Appeal, and (b) the apparent

lack of standing of Benham to commence and prosecute [the] adversary proceeding and the

putative claims asserted therein."[17]  The order was not appealed.

E.  Hagan's Sale Motion.

On June 16, 2010, Hagan filed a motion seeking approval of a compromise and authority

to sell the following assets of the Benham bankruptcy estate (collectively, "Rights, Claims and

Interests"), free and clear of liens, interests and encumbrances, to Nipomo Acquisition, LLC

("Nipomo Acquisition") for the sum of $450,000, subject to overbid:

> (i)  any and all rights, claims, interests, causes of action, demands of the Debtor,
> the Estate and the Trustee against (1) Security Pacific Bank ("Bank")' the Federal
> Deposit Insurance Corporation, as Receiver for Security Pacific Bank ("FDIC"),
> (3) Multibank 2009-1 Res-ADC Venture, LLC ("Multibank"), and (4) Fidelity
> National Title Company ("Fidelity"), and each and any of their respective parents,
> subsidiaries, affiliates, successors and assigns, past and present officers, directors,
> owners, members, representatives, agents, attorneys, and insurers, and each of
> them, and any of their respective successors and assigns, past or present

---

[16]  Statement of Position By David R. Hagen, Chapter 7 Trustee of In re Erik Benham, Case No.
9:08-bk-11432-RR, With Regard to Motion By Intervenor Federal Deposit Insurance
Corporation to Dismiss Erik Benham's Adversary Complaint to Determine Validity of Lien and
to Cancel Erroneous Reconveyance [Dkt. # 40] filed December 3, 2010, at 2:18-22.

[17]  Order Re Motion to Dismiss Plaintiff Erik Benham's Adversary Complaint to Determine
Validity of Lien and Cancel Erroneous Reconveyance [Dkt. # 43] entered on February 11, 2011,
at 3:2-5.

(collectively, the "FDIC Parties"), or against the rights, title or interests of any of the FDIC Parties in and to approximately 84 acres of land owned by the MVE bankruptcy estate located in the County of San Luis Obispo, State of California, on which MVE partially completed the construction of single family dwellings (the "Real Property");

(ii) any and all claims, as defined in section 101(5) of the Bankruptcy Code, of the Debtor and the Estate against MVE, including the Maria Vista Claim;

(iii) any and all interests in, causes of action, demands, claims against, and liens of the Debtor and the Estate upon the Real Property, however arising, including all rights and beneficial interests under the Benham Deed of Trust and any liens upon any personal property of MVE appertaining to the Real Property;

(iv) any and all rights, claims, causes of action, demands, and powers of the Debtor and the Estate to reinstate the Benham Deed of Trust as a lien encumbering the Real Property (whether through rescission of the Full Reconveyance or otherwise), including those (1) claims and defenses advanced by the Debtor in defense of, and opposition to, the FDIC Adversary Proceeding, (2) claims or defenses asserted by or on behalf of the Debtor in the Benham Appeal, and (3) claims, demands, requests for relief, causes of action and remedies asserted or sought by the Debtor in the Benham Adversary Proceeding; and

(v) any and all rights, claims, causes of action, demands, and powers, including any arising under section 544 of the Bankruptcy Code, of the Debtor and the Estate (1) relating to the Loan and the Additional Loan, or (2) to affect, avoid, subordinate, modify, or otherwise alter the First Construction Deed of Trust, the Re-Recorded First Construction Deed of Trust, the Second Construction Deed of Trust, or each of them, and any of the rights and liens created thereby.[18]

Benham objected to the Sale Motion by response filed on December 22, 2010, and appeared in opposition to the Sale Motion at the hearing thereon. On January 10, 2011, the court overruled Benham's objection and approved a sale of the Rights, Claims and Interests to Nipomo Acquisition as the successful bidder. An order approving the sale was entered on January 25, 2011.[19] Benham filed a notice of appeal. On April 23, 2013, Benham's appeal of the Sale Order

---

[18] Notice of Motion and Motion for Order Approving (A) Sale of Rights, Claims and Interests Free and Clear of All Liens, Claims, Interests and Encumbrances; and (B) Settlement and Compromise of Estates Rights, Claims and Interests Pursuant to Bankruptcy Rule 9019; Memorandum of Points and Authorities in Support Thereof; Declaration of David R. Hagan in Support Thereof ("Sale Motion") [Dkt. # 383], at 6:23-7:21.

was ultimately dismissed by the Ninth Circuit for want of prosecution.  Benham's petition for a

writ of certiorari to the United States Supreme Court was denied on January 27, 2014.

F.  Adversary No. 9:10-ap-01171.

  While the Sale Motion was pending, Benham filed a complaint in Adversary No. 9:10-

ap-01171, Benham v. Federal Deposit Insurance Corporation, et al., in the MVE bankruptcy case

on June 22, 2010 ("Benham Adversary Proceeding"), alleging, in pertinent part, that the Re-

recorded First Construction Deed of Trust owned by the FDIC, as successor to Security Pacific

Bank, was a document forged by Security Pacific Bank, that Fidelity recorded the document with

knowledge of the forgery, and that the FDIC "continues to collude and maintain the fraud of the

Bank and Fidelity as receiver for Bank to the financial devastation of MVE."[20]  Benham sought

damages and other relief based upon the 13 claims alleged in the complaint, including fraud,

conversion, civil conspiracy, breach of fiduciary duty, negligence, bankruptcy fraud, forgery, and

obstruction of justice.  On July 26, 2010, the FDIC and Fidelity each filed a motion under

F.R.Civ. P. 12(b)(6) seeking dismissal of the complaint under F.R.Civ.P. 12(b)(6) because

Benham lacked the requisite standing to pursue the claims made the basis of the complaint.

Benham opposed the motions claiming derivative standing in that the complaint ostensibly was

filed on behalf of all unsecured creditors of the MVE bankruptcy case.

  On February 24, 2011, Nipomo Acquisition, which had purchased the claims made the

basis of the Complaint from the Benham bankruptcy estate on January 25, 2011, filed a Notice of

Dismissal of Adversary Proceeding Pursuant to Bankruptcy Rule 7041.  The Benham Adversary

Proceeding was dismissed over Benham's opposition and closed on June 22, 2011.  The

dismissal was not appealed.

---

[19]  Order Approving (A) Sale of Rights, Claims and Interests Free and Clear of All Liens, Claims,
Interests and Encumbrances; and (B) Settlement and Compromise of Estates Rights, Claims and
Interests Pursuant to Bankruptcy Rule 9019 ("Sale Order") [Dkt. # 477].

[20]  Complaint [Dkt. # 1] filed June 22, 2010, at 6:3-4.  The allegations in paragraphs 12-30 of the
complaint in the Benham Adversary Proceeding entitled "Background Facts" are nearly identical
to the allegations in paragraphs 10 through 28 of MVE's complaint in this adversary proceeding.

G.  Foreclosure Under the First Construction Deed of Trust and Re-recorded First Construction Deed of Trust.

On November 24, 2008, the FDIC filed Proof of Claim # 45 in the amount of $22,535,906.49 for the balance due under the Phase I Loan and Phase II Loan.  On February 8, 2010, the FDIC transferred Proof of Claim # 45 to Multibank.[21]  On August 17, 2010, Sequoia Financial Solutions IV, LLC ("Sequoia") purchased the Phase I Loan from Multibank.[22]

On February 17, 2011, Sequoia foreclosed its liens under the First Construction Deed of Trust and Re-recorded First Construction Deed of Trust securing the Phase I Loan.  Nipomo Real Estate Group, LLC and Banconsulting Services, LLC purchased the lots securing the Phase I Loan at the foreclosure sale as evidenced by Trustee's Deed recorded as Instrument No. 11-13958 in the San Luis Obispo County Real Property Records on March 22, 2011.

H.  MVE Abandonment Order.

On March 11, 2011, Namba filed and served a notice of his intention "to abandon the estate's interest, if any, in the entire 84 acre Maria Vista Estates project, located at 555 Vista Del Rio, Nipomo, California (the "Property")."[23]  In his notice, Namba stated:

> The Trustee has concluded that all of the Property is burdensome to the estate and is of inconsequential value or benefit to the estate.  Specifically, the Property does not have any equity that can be liquidated for the benefit of the estate.  Secured claims against the Property exceed $23,000,000 and proposed purchase offers for the Property have not exceeded $13,000,000.  In addition, the estate lacks sufficient funds to continue to insure the Property and to maintain 24-hour security.  Therefore, based on the foregoing, the Trustee contends pursuant to his business judgment, that the abandonment of the estate's interest in the Property, if any, is in the best interests of the estate and its creditors.[24]

MVE and Benham were served with the notice.  Neither filed opposition nor requested a hearing. On April 28, 2011, the court entered an order authorizing Namba "to abandon the estate's

---

[21]  Request for Issuance of Notice of Transfer of Claim Pursuant to F.R.B.P. 3001(e) [Dkt. # 336] filed April 28, 2010.

[22]  Request for Issuance of Notice of Transfer of Claim Pursuant to F.R.B.P. 3001(e) [Dkt. # 366] filed December 22, 2010.

[23]  Notice of Chapter 7 Trustee's Intention to Abandon Assets [Dkt. # 379], at 1:25-26.

[24]  Id. at 2:1-8.

interest, if any, in the entire 84 acre Maria Vista Estates project, located at 555 Vista Del Rio,
Nipomo, California" and stating that "such abandonment shall be deemed effective without
further order of the Court."[25]   The Abandonment Order was not appealed and is a final order.

I.   Settlement of MVE Estate's § 506(c) Claim.

On June 16 2011, Namba filed a motion in the MVE bankruptcy case seeking approval of
a settlement with Sequoia, Fidelity, and RES-CA MV Estates, LLC ( the "FDIC Parties") under
the terms of which (1) the MVE bankruptcy estate would receive the sum of $200,000 in
settlement of its claim against the FDIC Parties for recovery of the reasonable, necessary costs
and expenses incurred in preserving the MVE Project for the benefit of the FDIC Parties; and (2)
in consideration therefor, the FDIC Parties would receive a release of claims from the MVE
bankruptcy estate.[26]   The Settlement Agreement between Namba and the FDIC Parties executed
by Namba on June 8, 2011, attached to the Settlement Motion as Exhibit "1," provided in
pertinent part:

> 3.   Release.   Trustee hereby releases, waives and relinquishes all claims, rights,
> causes of actions or contentions (collectively, "Claims") of any kind or nature,
> whether transferable or assignable, that he may possess or own that he may assert
> against any of the FDIC Parties arising in any way out of the Property, and/or
> security interests asserted or taken in the Property.   Said releases extend to any
> and all claims that would otherwise be preserved under Section 1542 of the
> California Civil Code, and hereby waives his rights under said section, which
> reads as follows:
>
>> "A General release does not extend to claims which the creditor
>> does not know or suspect to exist in his or her favor at the time of
>> executing the release, which if known by him or her must have
>> materially affected his or her settlement with the Debtor.
>
> Trustee hereby warrants and represents that he has not transferred, sold, alienated,
> pledged or otherwise encumbered, and will not, transfer, sell, alienate or

---

[25]  Order Authorizing Chapter 7 Trustee's Abandonment of Real Property Asset ("Abandonment Order") [Dkt. # 381], at 2:1-4.

[26]  Chapter 7 Trustee's Motion for Order Authorizing Compromise of Estates' 11 U.S.C. § 506(c); Memorandum of Points and Authorities; Declaration of Jerry Namba in Support Thereof ("Settlement Motion") [Dkt. # 383].

otherwise encumber, the Claims prior to the tender of the sums called for in this Agreement.[27]

On June 16, 2011, MVE and Benham were served with the Settlement Motion and notice of an opportunity to request a hearing on the motion.  The notice recited "[t]he salient terms of the proposed settlement" and specifically stated that "the Trustee will provide the FDIC Parties with a full general release (more specifically described in the Agreement)."[28]  On June 28, 2011, Benham filed a response in opposition to the Settlement Motion charging, among other things, that Namba "proposes a Compromise of the Maria Vista Estates Property subject to a potentially invalid Deed of Trust," that Namba "has never analyzed or has just completely ignored the full extent of the fraudulent nature of the [Security Pacific] Bank, its owner Ezri Namvar, and Diana Voss of Fidelity National Title," and that approval of the Settlement Motion should be denied because "the Compromise does not address the validity of the Bank's Re-Recorded Deed of Trust" or "the value of any of the assets being Compromised."[29]  At a hearing on September 6, 2011, Benham appeared and was heard in opposition to the proposed compromise.  Benham's objection was overruled at the conclusion of the hearing.  On September 12, 2011, an order was entered authorizing Namba "to enter into the proposed compromise on the terms set forth in the Settlement Agreement attached as Exhibit '1' to the Motion" and determining that "[n]otice of the Motion was adequate under the circumstances and pursuant to 11 U.S.C. § 102."[30]  The Settlement Order was not appealed and is a final order.

J.  Adversary No. 9:12-ap-01056.

On February 24, 2012, Benham filed a complaint against Sequoia, Sequoia Equities, Inc., Sequoia Debt Ventures, Inc., Sequoia Ventures Group, Inc., Inland Community Bank, California

---

[27] Id. at Exhibit 1, 4-5.

[28] Notice of Chapter 7 Trustee's Motion for Order Authorizing Compromise of Controversy [FRBP § 9019; LBR § 9013-1] [Dkt. # 384], at 2:11-16.

[29] Preliminary Opposition to Motion for Order: (1) Authorizing Compromise of Estates' 11 U.S.C. § 506(c), at 5:14-18; 8:13-14.

[30] Order Granting Trustee's Motion for Order Authorizing Compromise of Estate's § 506(c) Claim ("Settlement Order") [Dkt. # 388], at 1:26-2:4.

Funding, Fidelity, Roger Hoss, Joseph Eisenberg, Nipomo Acquisitions, Nipomo Real Estate

Group, L.L.C., Ban Consulting Services, L.L.C., Multibank, Rialto Capital Management, LLC,

and First American Title Company ("First American") in Case No. CV-120116, Benham v.

Sequoia Equities, Inc., et al., in the Superior Court of California, County of San Luis Obispo.

Benham's First Amended Complaint ("Sequoia Complaint") alleged nine causes of action: (1)

Fraud; (2) Aiding and Abetting Fraud; (3) Civil Conspiracy to Commit Conversion; (4) Breach

of Fiduciary Duty; (5) Negligent Misrepresentation; (6) Declaratory Relief; (7) Unfair Business

Practices; (8) Breach of the Covenant of Good Faith and Fair Dealing, and (9) Tortious

Interference predicated on Benham's contention that the Re-recorded First Construction Deed of

Trust was forged.  The factual allegations in paragraphs 20-37 of the Sequoia Complaint are

substantively identical to the factual allegations in both paragraphs 12-30 of the complaint in the

Benham Adversary Proceeding and paragraphs 10-28 of MVE's Complaint in this adversary

proceeding.

On March 5, 2012, First American removed the Sequoia Complaint to this court in

Benham's bankruptcy case, arguing that "[t]he Trustee entered into an agreement with the parties

allegedly responsible for the forged deed of trust" and "purchased the claims the bankruptcy

estate held against them" in an agreement approved by the court on January 25, 2011.[31]  On

November 28, 2012, the court granted summary judgment in favor of Joseph A. Eisenberg and

Nipomo Acquisitions on the causes of action set forth in the Sequoia Complaint.  By separate

orders, the court dismissed with prejudice the claims made the basis of the Sequoia Complaint

against the remaining named defendants.  Benham appealed each of the orders.  On March 21,

2013, the district court dismissed Benham's appeal of two orders as untimely.  On September 12,

2014, the district court dismissed the balance of his appeal for lack of standing.  The appeal is

pending before the Ninth Circuit.

---

[31] Notice of Removal of Civil Action Pursuant to 28 U.S.C. § 1452(a),  at 4:1-4.

K. <u>Namba's Final Report in MVE</u>.

On March 15, 2013, Namba filed his Trustee's Final Report in the MVE bankruptcy case. Benham objected to Namba's final report and request for compensation, alleging that Namba had not fulfilled his statutory duties as trustee because he had not independently investigated Benham's claim of fraud against Security Pacific Bank and Fidelity in conjunction with the execution and recording of the Re-recorded First Construction Deed of Trust.[32]  At a hearing on June 5, 2013, Benham's objection was overruled and final compensation sought by Namba and his professionals was approved.  An Order Allowing Administrative Claims, Professional Fees and Expenses, Trustee's Fees and Expenses was entered on June 21, 2013.  Benham's appeal from the order was dismissed for lack of standing on July 20, 2014.

On July 9, 2015, Namba filed his Chapter 7 Trustee's Final Account and Distribution Report Certification That the Estate Has Been Fully Administered and Application to be Discharged (TDR).  On August 8, 2015, Benham objected to Namba's TDR, reiterated the allegations of fraud by Security Pacific Bank and Fidelity, and requested that Namba's request to be discharged as trustee be denied.  Benham's objection was joined by MVE and BenIng Company, L.L.C.  The objection was not set for hearing, and the case remains pending before the court.

L. <u>Hagan's Final Report in Benham</u>.

On August 6, 2015, Hagan filed his Amended Trustee's Final Report (TFR) in the <u>Benham</u> case. Benham objected to Hagan's final report and request for compensation, alleging that Hagan, like Namba, had not fulfilled his statutory duties as trustee because he had not independently investigated Benham's claim of fraud against Security Pacific Bank and Fidelity in conjunction with the execution and recording of the Re-recorded First Construction Deed of

---

[32] Initial Opposition and Reply Regarding Trustee Jerry Namba's Final Report and Applications for Compensation; Declarations of Erik Benham and Exhibits [Dkt. # 441].

Trust.[33]  At a hearing on September 22, 2015, Benham's objection was overruled and final

compensation sought by Hagan and his professionals was approved.  An Order Allowing

Administrative Claims, Professional Fees and Expenses and Trustee's Fees and Expenses was

entered on September 28, 2015, together with a separate Order Overruling Objections to

Amended Trustee's Final Report and Final Applications for Compensation and Reimbursement

of Expenses of Trustee and Professionals.  Both orders were appealed by Benham on October 9,

2015.

M.  Notice of Removal.

On November 4, 2015, MVE commenced this action against Nipomo and Costa Pacifica

in Case No. 15 CV 0600, Maria Vista Estates v. Mi Nipomo, LLC, et al., in the Superior Court of

California, County of San Luis Obispo.  MVE's Complaint seeks a judgment declaring that the

Re-recorded First Construction Deed of Trust is void due to alleged fraud, that the foreclosure

sale thereunder is set aside, and that MVE is the owner of the impacted lots in the MVE Project.

As previously stated, the factual allegations in paragraphs 10-28 of MVE's Complaint are

substantively identical to the factual allegations in both paragraphs 12-30 of the complaint in the

Benham Adversary Proceeding and paragraphs 20-37 of the Sequoia Complaint.

On December 29, 2015, Nipomo and Costa Pacifica removed MVE's Complaint to this

court pursuant to 28 U.S.C. §§ 1441(a) and 1452(a), asserting that:

> All claims for relief relating to the rights of Maria Vista in the property are core
> proceedings.  First, the claims alleged in the [Complaint] are property of the
> bankruptcy estate as they involve pre-petition conduct, and all proceedings
> regarding the sale or use of estate property are core proceedings.  (11 U.S.C. §
> 157(b)(2)(M)).  Second, the claims in the [Complaint] involve pre-petition liens
> that were held against Maria Vista's bankruptcy estate, and require a
> 'determination of the validity, extent, or priority of liens' constitute core
> proceedings.  (11 U.S.C. § 157(b)(2)(K)).  Third, the claims are core proceedings

---

[33]  Initial Objections to Chapter 7 Trustee David R. Hagan's Final Account and Distribution
Report Certification that the Estate Has Been Fully Administered and Application to be
Discharged; Request for Hearing [Dkt. # 756].

because they potentially impact the administration of Maria Vista's bankruptcy estate.  (11 U.S.C. § 157(b)(2)(A) & (O)).[34]

Nipomo and Costa Pacifica further assert that "[f]ederal question jurisdiction appears on the face of the . . . [Complaint]" [because] "[t]he claims involve pre-petition conduct relating to property of the Maria Vista bankruptcy estate and the impact of prior orders entered in the Maria Vista bankruptcy case and the Benham Bankruptcy case."[35]

On January 21, 2016, MVE filed its motion to remand the action to state court pursuant to 28 U.S.C. § 1441(c), arguing that "the action seeks to quiet title to certain lots within the [MVE Project] which were sold as part of a foreclosure on a fraudulent deed of trust"[36] and that the bankruptcy court lacks subject matter jurisdiction because the claims made the basis of the Complaint "were abandoned by the bankruptcy trustee when he knowingly abandoned any interest that the bankruptcy estate had in the [MVE Project} despite the forgery allegations."[37] On February 25, 2015, Nipomo filed a response in opposition to MVE's Remand Motion, which was joined by Costa Pacifica.  MVE replied on March 3, 2016, at which time the evidentiary record closed.  After a hearing on March 10, 2016, the court continued MVE's Remand Motion to May 12, 2016, pending a ruling by the court.

## II.  DISCUSSION

Section 1447(c) states that a case must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction."  28 U.S.C. § 1447(c). Bankruptcy courts may also remand a claim or cause of action to the court from which it was removed "on any equitable ground."  28 U.S.C. § 1452(b).  "This 'any equitable ground' remand standard is an unusually broad grant of authority."  McCarthy v. Prince (In re McCarthy), 230

---

[34] Notice of Removal of Civil Action Pursuant to 28 U.S.C. Sections 1331, 1441 and 1452(a), at 4:12-20.

[35] Id. at 22-24.

[36] Plaintiff Maria Vista Estates' Notice of Motion and Motion for Remand of Action to State Court ("Remand Motion"), at 3:4-5.

[37] Id. at 7:20-22.

B.R. 414, 417 (9th Cir. BAP 1999).  "It subsumes and reaches beyond all of the reasons for

remand under nonbankruptcy removal statutes."  Id.

MVE urges a remand of MVE's Complaint under 28 U.S.C. § 1447(c) because,

according to MVE, the removed action is not a civil proceeding that arises in or arises under title

11 nor is it related to MVE's bankruptcy case.  MVE argues that the "action seeks to quiet title to

certain lots within the [MVE Project] which were sold as part of a foreclosure on a fraudulent

deed of trust."[38]  MVE further argues that the alleged fraud was "made known to the bankruptcy

trustee, Jerry Namba, who elected to abandon any and all interest in the [MVE Project]."[39]  MVE

reasons that "[t]his action must be remanded to State Court as the bankruptcy estate no longer

has any interest in the [MVE Project] (which encompasses the lots which are the subject of this

action) because the bankruptcy trustee, with knowledge of the forgery claims which are the

subject of the State Court action, abandoned all interest in the Project back in 2011."[40]  MVE

concludes that the removed action will have no impact on the administration of MVE's

bankruptcy estate because the "bankruptcy estate stands to gain nothing from [MVE's]

lawsuit[,]"[41]  Namba has filed his final report, and "[t]he only apparent reason the bankruptcy is

not closed is due to [a] pending appeal."[42]

"Bankruptcy courts have subject matter jurisdiction over proceedings 'arising under title

11, or arising in or related to cases under title 11."  In re Wilshire Courtyard, 729 F.3d 1279,

1285 (9th Cir. 2013) (quoting 28 U.S.C. § 1334(b)).  "[J]urisdiction must be analyzed on the

basis of the pleadings filed at the time of removal without reference to subsequent amendments."

---

[38]  Plaintiff Maria Vista Estates' Notice of Motion and Motion for Remand of Action to State
Court ("Remand Motion"), 3:4-5.

[39]  Id. at 3:18-19.

[40]  Id. at 4:5-10.

[41]  Id. at 7:23-24.

[42]  Id. at 8:13-15.

Sparta Surgical Corp. v. Nat'l Ass'n of Securities Dealers, Inc., 159 F.3d 1209, 1213 (9th Cir. 1998).

MVE's Complaint seeks a judgment setting aside the Re-recorded First Construction Deed of Trust and the foreclosure sale thereunder as void, and declaring that MVE is the owner of the impacted lots in the MVE Project. MVE's Complaint alleges a claim under state law that ostensibly affects title to real property, but that fact alone does not mandate a remand. At the heart of the dispute is the issue of whether or not MVE owns the claim made the basis of the Complaint and whether it possesses the requisite standing to pursue such claim to judgment. MVE argues that it owns the claim based upon this court's Abandonment Order. Nipomo and Costa Pacifica disagree, asserting that the fraud claim alleged in the Complaint was outside the scope of the Abandonment Order and within the scope of the release obtained by the FDIC Parties upon approval of the Settlement Agreement. Disposition of this pivotal issue involves the interpretation and enforcement of orders entered in the proper administration of the MVE and Benham bankruptcy estates which remain pending before this court, including but not limited to, (1) the Sale Order; (2) the Settlement Agreement; and (3) the Abandonment Order.

Bankruptcy courts have jurisdiction to construe and enforce their own orders. See Beneficial Trust Deeds v. Franklin (In re Franklin), 802 F.2d 324, 326 (9th Cir. 1986) ("Simply put, bankruptcy courts retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner."). "Requests for bankruptcy courts to construe their own orders must be considered to arise under title 11 if the policies underlying the Code are to be effectively implemented." Franklin, 802 F.2d at 326. Accordingly, this court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b), 1334(b), 1441(a) and 1452(a). Because the determination of MVE's right to pursue the fraud claim alleged in the Complaint as a basis to quiet title is inextricably intertwined with the interpretation and enforcement of this court's prior orders, this is a "core" proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

Having determined that the court has subject matter jurisdiction, the court declines to remand for want of jurisdiction pursuant to 28 U.S.C. § 1447(c). In determining whether to

remand a proceeding to state court on equitable grounds, courts in the Ninth Circuit have

considered the following fourteen non-exclusive factors (the Enron factors):

1.      The effect or lack thereof on the efficient administration of the estate;

2.      The extent to which state law issues predominate over bankruptcy issues;

3.      The difficult or unsettled nature of applicable law;

4.      The presence of a related proceeding commenced in state court or other non-
        bankruptcy proceeding;

5.      The jurisdictional basis, if any, other than 28 U.S.C. § 1334;

6.      The degree of relatedness or remoteness of the proceeding to the main bankruptcy
        case;

7.      The substance rather than the form of an asserted core proceeding;

8.      The feasibility of severing state law claims from core bankruptcy matters to allow
        judgments to be entered in state court with enforcement left to the bankruptcy
        court;

9.      The burden on the bankruptcy court's docket;

10.     The likelihood that the commencement of the proceeding in the bankruptcy court
        involves forum shopping by one of the parties;

11.     The existence of a right to jury trial;

12.     The presence in the proceeding of non-debtor parties;

13.     Comity; and

14.     The possibility of prejudice to the other parties in the action.

Citigroup, Inc. v. Pac. Inv. Mgmt. Co., LLC (In re Enron Corp.), 296 B.R. 505, 508 n.2 (C.D.

Cal. 2003); see Cedar Funding, 419 B.R. at 820 n.18.  The fact "[t]hat the matter is core does not

preclude a discretionary remand, as provided for in 28 U.S.C. § 1452(b)."  Nilsen v. Neilson (In

re Cedar Funding, Inc.), 419 B.R. 807, 820 (9th Cir. BAP 2009).

        MVE's Remand Motion does not mention 28 U.S.C. § 1452(b) nor contain any critical

analysis of the specific Enron factors that weigh in favor of remand.  Nipomo's opposition

discusses the <u>Enron</u> factors, and the court agrees with Nipomo that factors 1-4, 6-8, 10-12, and 14 weigh against a remand of this proceeding to state court.

First and foremost, retention of the proceeding will promote judicial economy and facilitate the efficient administration of the MVE bankruptcy case. This court is intimately familiar with MVE's bankruptcy, Benham's bankruptcy, the adversary proceedings that have been commenced in each of the bankruptcy cases, and the appeals that have been made by MVE and/or Benham from orders or judgments entered in the respective cases or proceedings. The salient issue of whether MVE owns the claim made the basis of the Complaint and possesses the requisite standing to pursue such claim turns on an interpretation of orders previously entered by this court. As Nipomo points out, this "Court has issued several decisions that affect the same issues that are being put in controversy in this action – namely, whether the [Security Pacific Bank] lien was invalid for fraud. The parties are entitled to rely on the finality of those decisions and not have them undermined by conflicting outcomes in other proceedings."[43] "[J]udicial economy, convenience, fairness and comity will sometimes best be served by the retention of jurisdiction by the federal court, particularly in instances where . . . the federal court has performed a substantial amount of legal analysis that would need to be repeated by the state court if the case were remanded." <u>Millar v. Bay Area Rapid Transit District</u>, 236 F.Supp.2d 1110, 1116 (N.D. Cal. 2002).

There are no unsettled or difficult issues of state law that might weigh in favor of remand nor are there related proceedings other than previous actions heard by this court. Moveover, the state law issues raised in MVE's Complaint do not predominate given the fundamental issue of whether MVE owns the claim made the basis of the Complaint and has the requisite standing to pursue the claim at all. It would be difficult to sever such issue because MVE's right to pursue the fraud claim as a basis to quiet title is inextricably intertwined with the interpretation and enforcement of this court's prior orders. The non-debtor parties to this adversary proceeding

---

[43] Opposition of Defendant Mi Nipomo, LLC to Motion for Remand of Action to State Court ("Nipomo Opposition"), at 2:1-4.

oppose remand, and the possibility of prejudice given the likelihood of inconsistent rulings

weighs heavily against remand.

Nipomo contends that "[q]uiet title and declaratory relief actions are equitable actions

with no right to a jury trial[,]" citing Caira v. Offner, 126 Cal.App.4th 12, 25 (2005). The court

expresses no opinion on the issue of whether or not MVE may be entitled to a jury trial in this

adversary proceeding, but the mere fact that MVE has demanded a jury trial does not, of and by

itself, require remand. Having determined that the bankruptcy court has subject matter

jurisdiction, the interests of judicial economy and efficiency are better served by the bankruptcy

court retaining jurisdiction over this adversary proceeding until the action is ready for trial. As

the Ninth Circuit explained in Sigma Micro Corp. v. Healthcentral.com (In re

Healthcentral.com), 504 F.3d 775 (9th Cir. 2007):

> [A] Seventh Amendment jury trial right does not mean the bankruptcy court must
> instantly give up jurisdiction and that the case must be transferred to the district
> court. Instead, the bankruptcy court is permitted to retain jurisdiction over the
> action for pre-trial matters. . . . [T]wo rationales justify this holding.
>
> First, allowing the bankruptcy court to retain jurisdiction over pre-trial matters,
> does not abridge a party's Seventh Amendment right to a jury trial. A bankruptcy
> court's pre-trial management will likely include matters of "discovery," "pre-trial
> conferences," and routine "motions," which obviously do not diminish a party's
> right to a jury trial. Moreover, even if a bankruptcy court were to rule on a
> dispositive motion, it would not affect a party's Seventh Amendment right to a
> jury trial, as these motions merely address whether a trial is necessary at all.
>
> Second, requiring that an action be immediately transferred to the district court
> simply because of a jury trial right would run counter to our bankruptcy system.
> Under our current system Congress has empowered the bankruptcy courts to
> "hear" Title 11 actions, and in most cases enter relevant "orders." As has been
> explained before, this system promotes judicial economy and efficiency by
> making use of the bankruptcy court's unique knowledge of Title 11 and
> familiarity with the actions before them. . . . Only by allowing the bankruptcy
> court to retain jurisdiction over the action until trial is actually ready do we ensure
> that our bankruptcy system is carried out.

Id. at 787-88 (emphasis in original).

MVE's lack of consent to the entry of final orders or a judgment by the bankruptcy court

does not compel remand. To the extent that the claims made the basis of MVE's complaint

might constitute non-core claims or "Stern claims,"[44] the bankruptcy court is authorized to hear

such matters and "submit proposed findings of fact and conclusions of law to the district court"

for entry of a final order or judgment by the district court "after considering the bankruptcy

judge's proposed findings and conclusions and after reviewing de novo those matters to which

any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Comity does not require remand. MVE commenced the state court action on November

4, 2015. Nipomo and Costa Pacifica removed the case to this court shortly after being served

with the Complaint. The case was pending in state court for only 55 days prior to removal.

Discovery had not commenced nor were any motions pending at the time of removal.

Finally, the court's interest in deterring forum shopping weighs against remand.

Although removal of the proceeding places a burden on this court's docket at a time when the

MVE estate is nearly administered and the only issue preventing a final distribution and closing

of the case is Benham's objection to Namba's TDR, a remand would simply countenance efforts

by MVE and Benham to shop for a forum other than this court to hear this claim.

Because the relevant Enron factors as applied to the facts and circumstances of this

adversary proceeding weigh heavily against remand, the court will decline to remand the action

to state court pursuant to 28 U.S.C. § 1452(b).

/// 

/// 

/// 

/// 

/// 

/// 

/// 

---

[44] "These claims are called 'Stern claims,' so named after the Supreme Court's decision in Stern v. Marshall, ___ U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). Stern claims are claims 'designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter.'" Mastro v. Rigby, 764 F.3d 1090, 1093 (9th Cir. 2014) (citation omitted).

1

2                              III.  CONCLUSION

3          Based on the foregoing, the court will deny MVE's Remand Motion.  A separate order

4  will be entered consistent with this memorandum decision.

5                                      ###

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Date: April 5, 2016

25                                          Peter H. Carroll
                                           United States Bankruptcy Judge
26

27

28